324-0346 N. Reeve Marriage of James Nadolski Appellant by Robert Black and Teresa Nadolski Appellate by Timothy Reeve Mr. Black, you may proceed. Thank you, Your Honor, and good morning. May it please the Court, Counsel, my name is Robert G. Black and I represent the Appellant James Nadolski here. This case is all about this thing called a true-up. What is a true-up? That's the main thing that I want to get at. A true-up, you don't find it in the Illinois Marriages of Dissolution and Marriage Act, it's not a legal term of art, it is a form of reconciliation. Where does it come from? I bet, I guess just usage over time, where one or both of the spouses has a fluctuating income, a non-guaranteed income. So the true-up is in place so that you set the base amount of what the maintenance is or should be based upon present earnings, and you come back and say, okay, here's where the financial records for the year, and based on those financial records, maybe you true it up, maybe you true it down. How about just calling it an adjustment? I would love to call it an adjustment, Your Honor, but that's kind of one of the ways that phraseology has developed. But one thing about this, in doing this reconciliation, one thing you have to remember that's important, there has to be a base rate to begin with. So when we have this judgment in MSA, Marital Settlement Agreement, back in 2016, no base rate for maintenance is set, maintenance is reserved. So there is nothing at that point to true-up. This provision doesn't come into effect, it doesn't really have any effect. And wasn't the base rate just zero? Zero, basically. Can a zero be a base rate? I don't know that a zero can be a base rate. I mean, zero times something is still zero, I guess. How do you define base rate? It seems like we've got this unique little argot into this area of law, which is created by attorneys. Well, I can define the base rate here, basically. Two years later, Mr. Dahlke comes in on a petition alleging a substantial change of  He now has, instead of being self-employed like he was at the time of the entry of the judgment of the solution, he now has a salary job and it's a set salary. So he can come in and say, okay, this is what my salary is. And based upon that, based upon Mrs. Dahlke's performance earnings, we can set what maintenance will be. And it was set at that time at $1,900 and change. That particular agreed order did not contain the same kind of prove-up language. And really, it should not have, because now we're dealing with set salaries as opposed to fluctuating income. The whole purpose behind the prove-up and doing the reconciliation is somebody has, you own your own business, gross profits may be great one year, may be lousy the next year, and that's when you come back in and say, okay, we're going to readjust as need be. But where there is an actual salary, there is no need for that sort of reconciliation. There's no need for that aspect of things. Well, if you have a salary and maintenance is reserves, and there's no order for a dollar amount of maintenance, but it's reserves, and you're a W-2 employee, I don't understand your argument. Well, the difference here is... Let's try and figure it out. Sure. The difference here, Your Honor, is at the time that he was self-employed, at the time of the MSA, they estimated $90,000 in gross income. Two years later, when he has the job, he has a salary, and they have salaries of $162,000. So you're weighing the $162,000 as against the other earnings versus the $90,000, which is fluctuating anyway, versus the other earnings. And that's how you can come to what is a set amount of $1,900 based upon the statute. So that then becomes the term of the maintenance. And again, this second order, this agreed order, does not contain any language that would be equivalent to this proof of thing. The other distinguishing feature about a proof-of, as it's developed, is that the true-of provision itself recognizes a change in income because, well, let me strike that. A true provision itself takes into effect or account and subsumes that there is going to be a substantial change in circumstances because of the vacillating incomes. So here, when we came back in, in 2018, a substantial change of circumstances was alleged. There isn't or wouldn't be a substantial change of circumstances if back then we had or wouldn't be a need to do the substantial change of circumstances if back then we had the working true-of provision with some sort of base amount salary. So the fact that there is a... Where does substantial change of circumstances go to? I mean, am I correct? The MSA said, in effect, it did award maintenance, didn't it? It reserved maintenance. There was no award of maintenance. Okay. So no formal award of maintenance. No formal award. But it required him to pay maintenance if his income went up, did it not? You know, I think that's kind of the rub. That's kind of the interesting thing here, Your Honor, is that it said it's zero based upon these levels, and how do you true-of or prove-of from no base amount? I apologize, Justice... Oh, no, that's fine. Yeah, because you've defined true-of. But isn't it basically a review, an adjustment? Is it true-of? It is. However, we have this order, agreed order, from 2018 that says, okay, your income now is this. It's set. We know it. Your salary is this. Your employee is supposed to self-employ. So based upon that income... Well, self-employed is still employed. Well, yeah, but self-employed... He's a salary worker as opposed to a business owner. Self-employed is not salaried. I mean, it's just... Well... So, now you have a salary in place, a definitive job, and then salary can be articulated. They know it. They match the levels. Here is what the parties agreed upon as the maintenance, monthly maintenance from this point forward. And there is no like provision for a true-of here because there doesn't need to be one because we don't have the widely fluctuating potential incomes. Does that answer the question? Maybe not. You know, and I look at... So, from that point forward, any modification would have to be by statute passed upon a substantial change in circumstances. Now, I look at this Article 3 of the NSA way back when, and it's a little difficult to follow. I think one of the things that you see right away is the numbering system. The numbering system has, at one point, you've got a 1 with an underline, a 2 with an underline, then you've got a 3 with no underline and no indent, and then you've got another 3 with a period and an indent. It's just very confusing. But the thing of it is, is that it talks about a base rate and there's no base rate, and it talks about a change in circumstances in what is numbered paragraph 3 without anything after it. That shall continue until such time as there is a change in circumstances. And there's a problem, there's a rub again, that when you do have that setup for a true-of, you're already presuming a change in circumstances. So then why would this say change in circumstances? That doesn't coalesce, it doesn't make any sense. Now, again, when James filed his petition for modification in August of 2018, he specifically elected a substantial change in circumstances, which we have discussed, which is now his salary, which is more than what was projected in his earnings two years prior to that. When the trial court sent its order then, the degree order, it said that amount per month, which is equal to the guideline maintenance based on $162,700 of income for James and $69,852 for Teresa. As an aside, this has been ongoing for some time. So we have the judgment in the MSA 2016. We have the petition filed in November 2018. We have the degree order November 2018. We don't have anything by Teresa filed until 2023. And it begs the question, why the delay? I mean, if she was so certain that there had been a reason to come back in because an adjustment of income was needed, it's a long time to sit on your hands. That would be my observation. Well, and two, the next recognized feature of doing a proof of is financial records. I think the record here is, charitably, I'll call it bereft of real information about financial records and financial information. I think what happened here is that there was an exhibit to one of the trial briefs that said, here's what I believe it should be. And then the court adopted it without any discussion, without any viewing, without its own calculations. And there was a problem there. And relatedly, the court at one point ruled that Richard Doudowsky had no credibility because he didn't recognize the term true-up. That meant he must be not true, because he didn't recognize the term true-up, even though they had been emailing back and forth about whether there should be differences. Well, this is just a dispute between them. How many people know what the term true-up is? I didn't before this case. And I suspect that most people in the public would not know either. So for the fact for the trial court to say, I'm disregarding all of your testimony because you said you heard the first term true-up in January, but you had these emails before that, I think that's just an abuse of discretion. And that lends itself to the fact that the court said, OK, here's the figures that she provided me. I'm not going to believe him or listen to anything that he has to say. And these are the figures I'm just going to accept. I think that's wrong. I think that's an abuse of discretion, presuming that we still have a situation where that needs to be considered. Underlying this is a contempt finding and a purge order. It was a reasonable belief, we believe, shown by the record, that the monthly maintenance was $1,900. And it was paid that way, all the way through. This increase, I mean, it's an honest belief. I don't think that even if you presume that there was some sort of change of change intended, and we don't believe there was by way of the record and the documents, but even if you presume that, it's an honest belief. What about the failure to notify Teresa of the income increases in a timely manner? Doesn't that go to his quick pay? Well, it would. Certainly if it was under a petition for substantial change of circumstances, that would be part of the allegations and that would be part of the proofs. But that's not what we have here. It didn't happen here. I mean, how do you square that with him sending a number of $1,818, in other words, doing his own recalculation, with him not thinking a recalculation was important? That was, if I'm correct about the record, that was a one month thing and that was corrected subsequently. But he recalculated. He did recalculate. Never once did he say, I'm not required to reconcile. As part of the basic back and forth here, the record shows that there was a recalculation. There was apparently some sort of accommodation that was intended to be reached and based upon his calculations, this is what it showed. But the record also reflects that what was ordered by the reorder of November 2018 was routinely paid. Might have been a couple of dollars off, might have been a couple of days late, but it was paid and it was all paid up. Well, by all of this, I think I've hit the high points, we would ask that the orders of January 16, 2024, April 30, 2024, be vacated in reverse, that there be a finding of no arrearages and that there be a vacated contempt finding in the purge amount. And I'll save the rest for a vote. Unless there's questions. I do. You have indicated there's no need for reconciliation when salaries are not expected to fluctuate in a significant manner. But, I mean, isn't it a practical matter that some people agree to reconciliation just to avoid coming back to court? Absolutely. Most definitely they do. And that's their choice. The agreed order here says nothing about any sort of reconciliation or coming back in to reconcile. All it says is, here's what it is and here's the amounts. And if there's a substantial change in circumstances, come on back in. And can you tell me what in the agreed order, with any specificity, negated or abrogated the true up, or are we left with what you're claiming is an inconsistency between reconciliation language and 510 language? I think it's more than an inconsistency. For the basic reason that I articulated, that to begin with, there's no base amount. The reconciliation presumes the base amount and there's no base amount. It's reserved. There's nothing to reconcile. There's nothing to come back and take a look at. When we come back two years later, we have the agreed order, there is an amount, but there's no similar language about reconciliation. And the reason again for that is fluctuating income in Mr. Nadelsky versus a salary, identified salary. Thank you, sir. Thank you. I have an opportunity to rebuttal, Mr. Black. Mr. Reid. Justice? Justices, may it please the court. No worries. Timothy Reid on behalf of Teresa Nadelsky. She's the appellee. Justice Holdred, she started towards the beginning of this asking along the lines of- Could you speak up just a little? Where does the true up come from? The true up comes from the contract that the parties entered into. And that contract still remains in place today. It was never defined in the contract, was it? Well, the phrase true up, agreed. I think in lieu of copying and pasting the language of the marital settlement agreement over and over again throughout the litigation, what everyone has done is say, we're going to call this a true up. But the concept is in the contract that the parties entered into. And that contract makes very clear that any time there's a change in the base, in the incomes of the parties, they're going to immediately recalculate, and that amount is going to be due to Ms. Nadelsky. So now you've defined true up in the contract? That would be what we're talking about when we use the phrase true up. Right? We're talking about what the parties contracted to. And whatever we call it, the concept is the same. The concept is whenever there's a change in the income, there needs to be a recalculation in maintenance. And that's what's articulated- Is that much more clearly understood in this little term? That's what it means is- Fair enough. Right. Okay. Right. And so within that contract, every time there's a change in income, it needs to be recalculated. Article III of the Marital Settlement Agreement specifically says after there's a change, the parties that agree to immediately make additional adjustments after any base rate pay. So that article is already contemplating not only what happens when maintenance starts being paid, but it's contemplating what happens after that. What's the MSA contemplating when the original figure is zero? What has to happen for it to go from reserved to a dollar amount that's required to be paid? What has to happen? So what it says is if either party has an increase in income of the base rates, and it says in parentheses what those were, $96,000 and $65,000, the party with the increase must immediately notify other, and then it shows you how to calculate it. 60-40. Right. It's the next paragraph talks about the variance, which was the maintenance statute at that time. Okay. And so that would be the answer to it. What the agreed order that was subsequently entered does, and I do think that the phrase at the beginning of that order is very telling. It says pursuant to Article 3. And at least my reading of that phrase means that what we're doing is we're trying to accomplish what's set forth in that, right? And what they're doing is calculating the amount that's owed on a monthly basis based off of the changes in the income. It's memorializing that. But nowhere in that agreement does it do anything to talk about we're getting rid of the way we're going to calculate it or that we're going to constantly recalculate it. It doesn't get rid of those provisions. It just applies those provisions. And that continues until this date. Another thing that came up today, and I think came up in Mr. Nadolsky's reply brief, is this concept that the marital settlement agreement was somehow the way it was because Mr. Nadolsky was self-employed. It doesn't say that anywhere. What it does is it says he is self-employed, and it says what my client does for a living. Would you kind of like speak up a little more and get closer to the mic? Sure. What it does is it says, it's at this room. I knew it was going to be a problem. What the document says is that whenever there's an increase in the income, the base rates, and it articulates what those are, that's when we're going to change the maintenance amount. It's got nothing to do with what they're doing for a living. Just by way of example, if Mr. Nadolsky was self-employed today, he still has to adjust his maintenance amount based on his income. This is about income, not whether it comes from self-employment or not. That's reading outside the language of the contract. I don't think anywhere is either party suggesting that this is an ambiguous provision in the MSA. The only thing that I'm hearing and reading in the briefs is that somehow the agreed order that was subsequently entered just completely negated all of the language in Article 3. That's what they say. Actually, in their brief, they say that it replaced Article 3. That, on its face, would lead to absurd conclusions because Article 3 just doesn't talk about the amount of maintenance. It talks about the duration of maintenance and the like, and it talks about how maintenance is going to be terminated. In no way could it be said that we're getting rid of those provisions. It's the same concept. The same concept is, in no way, just like the agreed order doesn't address the duration of maintenance, it doesn't address what the parties contemplated and how they're going to continuously recalculate maintenance. It doesn't do that. And so, Mr. Nadolsky did not pay the amount that was due, and so we've got a petition for rule-of-show cause that was filed. On its face, the failure to pay maintenance is contemptuous. Nowhere in the records did Mr. Nadolsky assert that he wasn't able to pay. He says he didn't know about it. Well, we're violating the court order. That's A, not a sufficient excuse. But B, even if it were a sufficient excuse, the record is filled with, as was mentioned earlier, there's emails back and forth where Mr. Nadolsky is acknowledging that he has a requirement. He mentions the 40% requirement. He knows it's there. And this concept that his lack of credibility was specifically related to this phrase true-up, there's a lot in the record to show why his credibility was lacking. The emails going back and forth, that he knew he needed to increase the amount or decrease the amount when it suited him, that's in the record. The other thing that's in the record is that he was not forthcoming with his income. In fact, the emails that were being exchanged, that was during a period of time where he thought that he could get a reduction in payments because the amount that he was proposing was going lower than the amount that was agreed to. So those various things go to his credibility in addition to this concept that he's saying that he's never heard the phrase true-up. So he violates the order. We have to have a clear order, first of all, for someone to violate it to be held in contempt, correct? 100%. And that's what my statement is. My reading of the language in the documents, the two words that we're really talking about, is that it is clear. And not only is it clear, but the evidence shows that he did know what to do because he's referring back in the emails to the paragraph that talks about how to calculate maintenance on an ongoing basis. And so for that reason, I think it is a clear order. There's nothing in the second order that at all attempts to articulate an amendment of that, of that language. And it's one of those situations where, and I've done this in my practice, if you are trying to get rid of a previously entered provision, it is very easy to get rid of it. You say, this provision is no longer applicable, right? You can write that language in. And when you've got a right that was articulated in a prior order that is easily gotten rid of by way of writing in the words, this is no longer applicable, and you don't do it, I think that's telling. And in my brief, I cite case law in support of that concept. So you're saying the language is clear and unambiguous in the MSA and the 2018? Yes, Judge. And so I'm saying, and so moving forward, these provisions, as are placed in the MSA, they still are enforced. That's moving forward because the second order did nothing to change that. If I can ask, the second order says, which sums the payment of which covenant is herein above made shall be subject to modification with respect to the amount payables pursuant to Section 510. In what circumstance would 510 come into play if all we're talking about is a true or reconciliation? When would a court need to consider the 510 factors and by inclusion in 510, the 504 factor?  Well, again, as a starting point, obviously there's a lot of case law out there about what constitutes a substantial change in circumstances. So what's 510 say? 510, paraphrasing, because I don't have it in front of me, but paraphrasing is there can be a modification if there's a substantial change in circumstances. Then the case law will talk about, with true-of situations in particular, talk about circumstances where there would not be under 510 a change in circumstances given the fact that the parties had already contemplated that change in circumstances. I think the Connolly case is one of the cases that talks about that. My argument is they did contemplate a change in circumstances by the mechanism to adjust makings. Right. That would be my argument. But why would it ever get into court? To get back to your question, that is, you know, it's a limited, I would imagine, number of circumstances, right? If everything had changed today except the parties' incomes were a little different and someone came in today and said, there's been a substantial change, we need to get rid of all this, my argument would be no, you can't do that. That was contemplated. But there's a wide variety of things that happened in my case. Or someone became disabled or something like that. All of those different things. Because there's certain termination provisions that are put in here that may not be covered, right? That someone could still come in under 510. I think, Justice, you gave it the perfect example of if somebody was disabled or the like, right? So that, to the answer, is where 510 comes in. I don't know that... Doesn't it come in to say, before we do this true-up, when you start referencing 510, there has to be the first hurdle of significant change of circumstances established? No. I do not believe so, no. Why not? If I'm understanding your question correctly, because the existing language already provides for it automatically being triggered, the existing language in... In Article 3 of the Marital Settlement Agreement. In the MSA. Right. And so the substantial change comes in. A, there's nothing in the Marital Settlement Agreement that waives 510. So you're saying 510 doesn't really apply here because all we have is an adjustment of a maintenance obligation from the 2018 amount set. Is that correct? Correct. Okay. So 510 wouldn't even apply then? Not in this case. I think what counsel was arguing is that that somehow was the agreed order's way of eliminating the true-up language. And my counter to that is that if you wanted to eliminate the true-up, pardon me for using the phrase, but I didn't mean what I'm talking about, if you wanted to eliminate the true-up language, there's an easier way of doing that than kind of ambiguously saying, well, now 510 applies, right? If that's what they were thinking, then they could have said it, and they didn't. And so I don't think it makes any change in how you apply the Marital Settlement Agreement. But isn't it almost like a rule that 510 applies before you go and get a maintenance obligation? It would be. And I was getting to that point is at the time that the MSA was entered, 510 applied, right? There's no statement in here that says that it's not modifiable maintenance, right? That you can't change this order. So to my position is it didn't happen. Again, this is speculation. That order was entered just before the maintenance law was about to change. And there was a lot of language subsequent to the 510 language in the agreed order that made clear that the tax consequences associated with this new order are the same as they were previously, right? Because we're still using gross... The reason why they're using gross income on this is because it's deductible to Mr. Gandolski and it's includable as income to my client. If that would have been entered five months later, then at that point in time it would have been questionable. It's been resolved what the answers are now, but it would have been questionable how that would happen at the time. It's been resolved with what I couldn't understand. The issue of what we're going to do in that circumstance is now resolved. When we modify maintenance today with an existing order, an order that existed prior to the change, we know how we're going to deal with that now. But at the time we didn't. That would be my guess as to why all that extra language is in there. I believe I'm out of time. But if you have any more questions, I'm happy to keep going. I don't. Thank you, sir. Thank you, Mr. Green. Mr. Black, we're both. Thank you, Your Honors. It's a basic rule of contract construction that you look at the intent of the parties at the time they entered into the agreement. So that's what we have to focus on. It is undisputed that an MSA is a contract. It is undisputed that a green order is a contract. So we look at the intent at the time these two things were entered. In 2016, there was a disparity in what might be the fluctuating levels of the income. Hence, there's a provision for the so-called CUBA, but it's based on a base amount that doesn't exist because maintenance is reserved. We come along then two years later, and now we're looking at the intent of the parties at this time. And at this time, they say, he's got the salary, we can figure this out. It's $1,900 a month, and the green order is subject to modification pursuant to Section 10 of the Act. So while it didn't say there is no longer a CUBA, when CUBA is not even utilized in the first one, the effect is, first of all, it didn't exist because how do you jump up from a base amount at zero? And secondly, it's set in place here. That was the party's agreement and intent at the time of the contracting of the agreed order. The MSA was not entered because Mr. Nadolski was self-employed. The levels itself in the view of maintenance was entered because he was self-employed. There was a big difference there. The order says he was supposed to pay $1,900, and he did pay the $1,900. There is no contempt. He made the payments that the last order of the court called for, the $1,981. Just give me one moment.  Again, we come back to the fact that by saying that there is a provision for change of circumstances in the agreed order, you're basically saying there is no proof of it because the proof of it takes that into account and that doesn't factor in. Unless there's any other questions, Your Honor? I don't. Thank you. We again stand on with a relief from the question. Thank you, Your Honor. The court thanks both sides for spirited arguments. We will take the matter under advisement and render a decision in due course. The court is adjourned until the next argument.